# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| PHILLY AUTO, INC. | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| CITY OF PHILADELPHIA | : | NO. 18-669 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                **January 24, 2019**

      This § 1983 action arises out of the City of Philadelphia's demolition of Philly Auto, Inc.'s fire-damaged warehouse. Philly Auto contends that the City demolished the building without notice and a hearing, depriving it of procedural due process under the Fourteenth Amendment and substantive due process under the Fourth Amendment. The City maintains that because the building posed an imminent threat to public safety, an emergency existed, requiring quick action. Thus, the dispositive question is whether the City's demolishing the building was to alleviate an imminently dangerous condition or was arbitrary.

      The parties have filed cross motions for summary judgment. Philly Auto claims that there was no emergency justifying the City's failure to provide due process. It contends that the City acted pursuant to a policy or custom, exposing it to municipal liability. The City contends that it acted pursuant to emergency powers that allow it to demolish a building immediately and without notice if necessary for public safety. It denies that it has any policy or custom of demolishing buildings without notice outside of an emergency.

      There are disputed issues of material fact precluding summary judgment. Foremost, there is the question of whether the building's condition created an imminent

danger to public safety. This calls for a factual determination. There is also a question of whether the City has a policy or custom of demolishing buildings without notice. Thus, we shall deny the motions for summary judgment.

## *Background*

### *The Fire and Notice to Philly Auto*

A fire occurred at Philly Auto's warehouse located at 4200 Torresdale Avenue in Philadelphia overnight on Friday, April 28, to Saturday, April 29, 2017.[1] The roof collapsed and the walls partially collapsed.[2] Michael Farley, a Unit Inspector with the City's Department of Licenses and Inspections (L & I), arrived at the property on the day of the fire on April 29.[3] He ordered an emergency demolition of the rear wall because it was in danger of collapse.[4] Determining that the property was "imminently dangerous," meaning that he believed that it would collapse in the next six months, he posted notice to that effect on the front door.[5] The notice remained on the door until at least May 8.[6]

Philly Auto, which is owned by Alex Landa and Roman Gamburg, also owns a car dealership two blocks away at 4530 Torresdale Avenue.[7] On the day of the fire, Byron Bonilla, a finance manager there, went to the property to view the damage.[8] He was advised that the City would remove some, and possibly all, of the rear wall.[9] Bonilla informed Gamburg and Landa of the fire on Sunday, April 30, and Monday, May 1, respectively.[10]

On May 1, two days after the fire, the City generated a "Final Notice of Violation and Order – Imminently Dangerous Building" (the May 1 Notice) addressed to Landa's home in Los Angeles, the address registered with the City for communications concerning

2

the property.[11]  The May 1 Notice advised that L & I had inspected the property on April 29 and "declared it Imminently Dangerous, in whole or in part."[12]  It instructed Philly Auto to retain an engineer to inspect the property and to make repairs in accordance with the engineer's written recommendations.[13]  If Philly Auto failed to do so, it warned, the City would demolish the property and bill Philly Auto for the cost.[14]  The May 1 Notice informed Philly Auto that it could appeal the "Imminently Dangerous" designation in writing to the Boards Administration Unit within five days.  At the bottom, it advised that the owner could email Farley at the address provided or contact the district office with any questions.[15]  The May 1 Notice was mailed on May 4 or 5.[16]

On May 3, four days after the fire, the City issued a second notice (the May 3 Notice) substantially similar to the May 1 Notice.[17]  The May 3 Notice was also mailed to Landa on May 4 or 5.[18]

On Saturday, May 6, the City was notified that the remaining portion of the rear wall had collapsed.[19]  On the morning of Monday, May 8, the Director of the Emergency Services and Abatement Unit (the Unit), Stephen Gallagher, used his emergency authority to bid the demolition of the property "for public safety to the people that lived adjacent to the building" and because the Unit "had not received any contact from the owners."[20]

Landa received the May 1 and 3 Notices on Tuesday, May 9, after the five-day appeal period set forth in the Notices had elapsed.[21]  The following morning, May 10, he emailed his attorney to discuss his options and sent a contractor to visit the property.[22]  The demolition of the property had already begun at 7:30 a.m.[23]  The City billed Philly Auto for the demolition totaling $271,559.32.[24]

*The Philadelphia Code and Emergency Services & Abatement Unit Field Manual*

Under the City's Property Maintenance Code (PM Code), a building is deemed "imminently dangerous" when any part of it is in "imminent danger of failure or collapse" or has fallen or collapsed, and human life is endangered. PM Code § 110.1 (2015). Once a building is designated "imminently dangerous," the City must post notice warning of the danger and prohibiting occupancy. *Id.* The City must also serve the owner or person in control of the property with a notice describing the danger and directing the owner to make specified repairs or demolish the building within a specified time. *Id.* § 110.2. The Code requires "the person thus notified to declare immediately to the code official acceptance or rejection of the terms of an order to demolish." *Id.*

The notice must be served in person or by regular mail, certified or registered mail, return receipt requested, addressed to the owner's last known address. Philadelphia Administrative Code (Admin. Code) § 502.4. Regardless whether the notice is received, posting of notice on the property constitutes service. PM Code § 110.3. Posting is deemed personal service. *Id.* The date of service is the date of the posting or mailing. Admin. Code § 502.5.

The PM Code authorizes the City to demolish a building immediately when necessary "to protect public safety" or "a condition exists which creates a hazard to life or property . . . ." PM Code §§ 110.2.1, 110.4. It also states: "Nothing in this code shall be deemed to limit in any way the right, under any existing law or ordinance, of any department of the City to correct or remove any condition deemed to be an immediate hazard to the health or safety of the public." *Id.* § 110.4.

The Unit's Field Manual sets forth guidelines for proceeding with the "Curbside Bid Process for Emergencies."[25] First, the official "writes" the case in its computer system.[26] A notice is generated the following day and mailed the day after that.[27] The official then "check[s] the return receipt of the certified mail to ensure proper notice has been given to the legal owner."[28] He also determines whether the property has been sold or mortgaged and whether the owner has obtained a permit to remedy the violations.[29] Lastly, the official bids the property to a demolition contractor, who has three hours to begin demolition.[30]

All Unit Inspectors must be familiar with the Field Manual, and L & I staff generally follow it.[31] However, the parties dispute whether the Field Manual applies to this matter. Philly Auto contends that it sets forth the "policies and procedures" that the Unit must follow when conducting a demolition.[32] The City responds that it is not required to follow the "guidelines" set forth in the Field Manual when it demolishes a building pursuant to the "emergency powers as enumerated in the [PM] Code . . . ."[33]

### *Standard of Review*

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

5

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. FED. R. CIV. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which she bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). This standard applies equally to cross-motions for summary judgment. *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).

### *Analysis*

#### *Fourteenth Amendment Procedural Due Process*

Under the Fourteenth Amendment Due Process Clause, states may not deprive any person of "life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Procedural due process requires the state to give notice and an opportunity to be heard before taking a person's property. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).

"Due process does not require that a property owner receive actual notice before the government may take his property." *Jones v. Flowers*, 547 U.S. 220, 226 (2006).

Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

In emergency situations where the government must take action quickly and a predeprivation proceeding may be impractical, the state need not necessarily provide a predeprivation hearing. *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008) (citing *Parratt v. Taylor*, 451 U.S. 527, 539 (1981)). Indeed, where there is a dangerous condition threatening the public safety that must be ameliorated immediately, the government may act without waiting for a predeprivation hearing. *Id.* at 418.

The government may not arbitrarily invoke the emergency exception to avoid providing predeprivation due process. *Id.* (quoting *Catanzaro v. Weiden*, 188 F.3d 56, 63 (2d Cir. 1999)). Although the government official's declaration of an emergency is analyzed "very deferentially," it still may not be arbitrary or an abuse of discretion. *Id.* (citing *Catanzaro*, 188 F.3d at 62-63). It must be reasonable under the circumstances. Stated differently, there is "a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion." *Id.* (quoting *Catanzaro*, 188 F.3d at 63).

On May 6, the City received a call indicating that the rear wall of the property was continuing to collapse.[34] Gallagher testified that people in the adjacent occupied building and pedestrians were in the zone of danger.[35] He stated that he ordered the emergency demolition "for public safety" because of the danger of further collapse.[36] These facts, if established, support a reasonable belief by Gallagher that the condition of the property presented an emergency requiring immediate action.

7

Philly Auto scoffs at Gallagher's reason for acting swiftly. It contends that he reacted to the owner's failure to contact the City to resolve the situation rather than to remediate a dangerous condition imperiling public safety. As proof, it points to his testimony that had the owner filed an appeal, he would not have proceeded with the demolition.[37]

The question is whether Gallagher's decision to proceed with the demolition was arbitrary or an abuse of discretion. The answer to this question depends on the resolution of credibility and contradictory facts, all matters within the province of the jury. The jury could find the fact that Gallagher would have delayed the demolition if Philly Auto had contacted him inconsistent with his assertion that an emergency existed. Likewise, it could find that Philly Auto's alleged failure to act improperly factored into his decision to proceed to demolition. *See Bullard v. City of Phila.*, 847 F. Supp. 2d 711, 721 (E.D. Pa. 2012) (reasonableness of demolition depended upon whether official ordered demolition of property to punish owner for failure to follow engineer's report).

*Fourth Amendment Substantive Due Process*

The Fourth Amendment protects citizens from unreasonable seizures. *Gruenke v. Seip*, 225 F.3d 290, 300 (3d Cir. 2000). It applies to seizures in the civil and criminal context. *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 51 (1993); *Gruenke*, 225 F.3d at 301. A Fourth Amendment seizure occurs when there is meaningful interference with possessory interests of property. *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 209 (3d Cir. 2001) (citation omitted). Meaningful interference includes the exercise of "dominion and control" over or destruction of property. *Stone v. Martin*, 720 F. App'x

8

132, 134–35 (3d Cir. 2017) (quoting *U.S. v. Jacobsen*, 466 U.S. 109, 120-21 (1984)); *Brown*, 269 F.3d at 209 (quoting *Jacobsen*, 466 U.S. at 124-25).

The demolition of the property was a seizure under the Fourth Amendment. *Brown*, 269 F.3d at 209. To prevail, Philly Auto must demonstrate that the demolition was unreasonable. *See Soldal*, 506 U.S. at 71. Otherwise, it cannot establish a substantive due process violation under the Fourth Amendment.

As we have noted, Gallagher testified that he ordered the demolition "because we had not received any contact from the owners" and as an "act of public safety to the people that lived adjacent to the building" as well as to "[a]nyone walking within feet of the building."[38] The reasonableness of his decision to demolish the property depends on which, if either, of these two explanations the jury finds was the prevailing reason for the demolition. If the jury finds that Gallagher reasonably believed an emergency existed, it may find the demolition of the property was reasonable. On the other hand, if it finds that he ordered the demolition because Philly Auto did not contact the City, the jury may conclude that the demolition was unreasonable. *See Bullard*, 847 F. Supp. 2d at 721 (reasonableness of demolition depended upon whether jury credited testimony that it was the result of an emergency or that it was meant as a "slap in the face" to the owner for not following the engineer's report).

Whether the demolition was an unreasonable seizure turns on Gallagher's explanation of the reasons for taking the action he took. That inquiry requires resolution of factual disputes which preclude summary judgment.

*Municipal Liability*

A municipality may be held liable under § 1983 for injuries inflicted by its agents or employees only if the injuries were the result of a governmental policy or custom. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010). A governmental policy or custom can be established by showing either that the decisionmaker possessing final authority to establish a municipal policy did so by issuing an official statement of policy or that a governmental custom developed when the official acquiesced to a course of conduct such that it operated as law. *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007). The plaintiff must also show a "conscious decision or deliberate indifference." *Simmons v. City of Phila.*, 947 F.2d 1042, 1063 (3d Cir. 1991).

A § 1983 claim against a municipality may not be predicated on respondeat superior. *Monell*, 436 U.S. at 694. Although a municipality may be liable for failure to train its employees, such a failure results in liability only if it amounts to "deliberate indifference" to the rights of those with whom the employees come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014).

Philly Auto argues that Gallagher was a decisionmaker with final authority to establish City policy and his decision to demolish the property without proper notice was an official pronouncement of this policy.[39] It contends this decision was consistent with the City's custom and practice of demolishing properties set forth in *Bullard v. City of Philadelphia* and *Gordon v. City of Philadelphia*.[40] 847 F. Supp. 2d 711; No. 07-5039,

2009 WL 2710247 (E.D. Pa. Aug. 28, 2009). Philly Auto responds that these cases are distinguishable because they did not involve emergency demolitions.[41] It also maintains that Philly Auto has failed to provide evidence that Gallagher acted with deliberate indifference.[42]

The City is correct that there was no emergency in *Bullard*. *See* 847 F. Supp. 2d at 721 ("the City has not come forth with competent evidence that an emergency did in fact exist"). However, the absence of an emergency is less clear in *Gordon*. *See* 2009 WL 2710247, at *3 (finding that property was bid for demolition on the same day it was designated as "Dangerous"). The jury may find that the demolition of the property without notice was the continuation of a policy, custom or practice dating back to *Gordon* and *Bullard*.

A question of triable fact also exists as to whether Gallagher was a final decisionmaker who acted with deliberate indifference. Philly Auto claims that Gallagher has "the final authority to order the demolition of a property designated unsafe or imminently dangerous" and points to deposition testimony that he has authority to order a demolition "[w]ith the proper documentation."[43] It relies upon testimony that he ordered the demolition notwithstanding the lack of notice to Philly Auto because it did not contact the Unit, rather than because of any emergency.[44] However, the City points to "clarif[ying]" testimony in which Gallagher indicates that it is actually the chief who exercises final authority and that he merely "guide[s]" the inspectors if they have questions or disputes.[45] It also notes that Gallagher testified that he ordered the demolition because the property was in danger of falling onto the neighboring occupied property, as well as passers-by.[46]

Because there are issues of fact as to whether the demolition of the property occurred pursuant to a practice, custom or policy facilitated by an indifferent final decisionmaker, the question of municipal liability shall be determined by the jury.

*Conclusion*

Disputed issues of material fact exist as to whether the City violated Philly Auto's procedural and substantive due process rights and whether the City may face municipal liability in this matter. Thus, both parties' motions for summary judgment are denied.

---

[1] Sec. Am. Compl. (SAC) (ECF 9) at Ex. A; Def.'s Stmt. of Undisputed Facts (DSUF) (ECF 29-1) at ¶ 2; Pl.'s Resp. to DSUF (PRDSUF) (ECF 30-1) at ¶ 2.

[2] DSUF at ¶ 4; PRDSUF at ¶ 4; DRPSMF at ¶34.

[3] Pl.'s Stmt. of Material Facts (PSMF) (ECF 28-2) at ¶ 35; Def.'s Resp. to PSMF (DRPSMF) (ECF 31-1) at ¶ 35; DSUF at ¶ 10; PRDSUF at ¶ 10.

[4] PSMF at ¶¶ 36-37; DRPSMF at ¶¶ 36-37.

[5] DSUF at ¶ 12; PRDSUF at ¶ 12; PSMF at ¶ 40; DRPSMF at ¶ 40.

[6] DSUF at ¶ 12; PRDSUF at ¶ 12.

[7] DSUF at ¶ 4; PRDSUF at ¶ 4; Tr. of Dep. of Roman Gamburg (Gamburg Tr.) (ECF 29-3) at 10:12-11:7; PSMF at ¶ 41; DRPSMF at ¶ 41.

[8] PSMF at ¶¶ 42-44; DRPSMF at ¶¶ 42-44.

[9] PSMF at ¶ 45; DRPSMF at ¶ 45.

[10] DSUF at ¶ 5; PRDSUF at ¶ 5; Gamburg Tr. at 11:8-16; Tr. of Dep. of Alexander Landa (Landa Tr.) (ECF 31-7) at 24:16-23.

[11] PSMF at ¶¶ 33, 49-50; DRPSMF at ¶¶ 33, 49-50.

[12] PSMF at ¶ 51; DRPSMF at ¶ 51; DSUF at ¶ 14; PRDSUF at ¶ 14.

[13] PSMF at ¶ 52; DRPSMF at ¶ 52.

[14] DSUF at ¶ 15; PRDSUF at ¶ 15.

[15] PSMF at ¶ 53; DRPSMF at ¶ 53; DSUF at ¶ 16; PRDSUF at ¶ 16.

[16] DSUF at ¶ 13; PRDSUF at ¶ 13c.

[17] DSUF at ¶¶ 19-20; PRDSUF at ¶¶ 19-20.

12

[18] PSMF at ¶ 60; DRPSMF at ¶ 60; DSUF at ¶ 19; PRDSUF at ¶ 19a.

[19] PSMF at ¶ 68; DRPSMF at ¶ 68.

[20] PSMF at ¶¶ 8, 10, 27, 70, 71; DRPSMF at ¶¶ 8, 10, 27, 70, 71.

[21] PSMF at ¶ 75; DRPSMF at ¶ 75.

[22] PSMF at ¶¶ 80-81; DRPSMF at ¶¶ 80-81.

[23] PSMF at ¶ 73; DRPSMF at ¶ 73.

[24] SAC at Ex. E.

[25] Field Manual (ECF 28-7) at 2.

[26] *Id.*; PSMF at ¶ 13; DRPSMF at ¶ 13.

[27] PSMF at ¶ 19; DRPSMF at ¶ 19; PRDSUF at ¶ 13e.

[28] Field Manual at 2.

[29] *Id.*

[30] *Id.*

[31] PSMF at ¶¶ 15-16; DRPSMF at ¶¶ 15-16.

[32] PSMF at ¶ 13.

[33] DRPSMF at ¶¶ 14, 18.

[34] PSMF at ¶ 68; DRPSMF at ¶ 68.

[35] DRPSMF at ¶ 70 (citing Tr. of Dep. of Stephen Gallagher (Gallagher Tr.) (ECF 28-5) at 63:19-64:13).

[36] *Id.* (citing Gallagher Tr. at 63:19-64:13).

[37] *Id.* (citing Gallagher Tr. at 63:19-64:13).

[38] *Id.* at ¶ 70 (citing Gallagher Tr. at 63:19-64:13).

[39] Memo. ISO Pl.'s Mot. Summ. J. (ECF 28-1) at 10.

[40] *Id.*

[41] Def.'s Resp. to Pl.'s Mot. Summ. J. (ECF 31) at 7-8.

[42] *Id.* at 8-9.

[43] PSMF at ¶ 11 (citing Gallagher Tr. at 12:6-8).

[44] *Id.* at ¶¶ 70, 74 (citing Gallagher Tr. at 56:13-24, 63:22-24, 64:1-2).

[45] DRPSMF at ¶ 11 (citing Gallagher Tr. at 12:11-16).

[46] *Id.* at ¶ 70 (citing Gallagher Tr. at 63:19-64:13).